# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5743 | **DATE** | 7/10/2003 |
| **CASE TITLE** | Thompson vs. Proviso Township High Schools District 209 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [20-1] is granted on Count III and denied on Counts I, II, IV and V. Final pretrial order and all pretrial materials are to be submitted to chambers by 9/5/03. Final pretrial conference is set for 9/18/03 at 4:00 p.m. Case will be referred to the designated magistrate judge for settlement conference.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **3** |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | JUL 11 2003 |
| | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | 7/10/2003 |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice<br>MD<br>mailing deputy initials |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RAY THOMPSON, | ) | **DOCKETED** |
| | ) | |
| Plaintiff, | ) | JUL 1 1 2003 |
| | ) | |
| v. | ) | No. 01 C 5743 |
| | ) | Judge Joan H. Lefkow |
| PROVISO TOWNSHIP HIGH SCHOOLS DISTRICT 209, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ray Thompson,[1] has filed a five-count first amended complaint against defendant, Proviso Township High Schools District 209 ("the School District"), alleging discrimination on account of his race (black) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. §§ 1981, 1983 (Counts I-III), retaliation in violation of Title VII (Count IV), and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (Count V). Before this court is the School District's motion for summary judgment on all counts. The court has jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331, 1343, 29 U.S.C. § 626 and 42 U.S.C. § 2000e-5(f). For the reasons stated herein, the court grants the motion in part and denies it in part.

---

[1] Hereinafter, last names will be used in subsequent references to individuals.

1

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS STATED IN A LIGHT MOST FAVORABLE TO THE PLAINTIFF

**A.** **Overview of the School District's application process for a teaching position**

Because Thompson's claims concern the School District's failure to hire him for a math teaching position, what follows is an overview of the School District's application process:

The School District posts vacancies for teaching positions throughout the school year. It also posts vacancies during the summer months if there is a late opening. (Imburgia Dep. at 9-10.) To fill a vacancy, the department chairperson of a school within the School District reviews the applications kept on file in the School District's human resources office. The human resources office keeps applications "active" in a two-step procedure. Initially, an active application is on file in the office's front room until November or December of the year that the candidate applied for a position. (*Id.* at 24.) At the end of that time period, the office moves the file to its back room until November or December of the following year. During this time period, the office may access a file to set up an interview although this typically does not occur. (*Id.* at 26.) Thereafter, the office moves the candidate's file "downstairs" to a larger file room. (*Id.*) Once a file is moved downstairs, the office does not look at the file unless the candidate contacts the School District to "reactivate" his file. (*Id.* at 14.)

For the "active" applications, a department chairperson selects the candidates to be interviewed. If, after the initial interview, the department chairperson determines a particular candidate is qualified for a teaching position, that candidate is referred to the principal for a second interview. If the principal approves the candidate, then the department chairperson performs telephone reference checks and completes any necessary paperwork. Assuming all references are positive, the paperwork is returned to the principal for signed approval and forwarded to the human resources office.

Subsequently, the Director of Human Resources confers with the Assistant Superintendent for Curriculum and Instruction and together they decide whether to recommend the candidate to the Superintendent and ultimately to the Board of Education. If the Board of

3

Education approves the candidate for employment, then the human resources office extends an employment offer to that candidate.

*Minority issues*

Each year, the School District receives approximately 300 to 400 applications for teaching positions and hires anywhere from 25 to 100 teachers. Of the applicant pool, minorities typically make up less than 30%.

Furthermore, the School District follows an Equal Employment and Minority Recruitment policy, adopted in 1992, that prohibits discrimination on the basis of age, race and any other protected status. Moreover, the School District implemented a Working Plan for Minority Recruitment (the "Working Plan") in an attempt to recruit a greater number of qualified minority teachers. In 1992, Proviso East High School ("Proviso East") and Proviso West High School ("Proviso West"), the School District's two high schools, had a student enrollment of 92.7% and 73.8% minority, respectively. Of the certified staff members, Proviso East and Proviso West consisted of 17.2% and 8.9% minority, respectively. A draft of the Working Plan indicates that the School District had an initial goal to increase the number of minority teachers from 29 in 1992 to approximately 54 by 1998. It is not established, however, whether the School District ever decided to make this number a goal. Nonetheless, the School District acknowledges that it most likely did not employ 54 minority teachers in 1998.

**B.    Thompson's background**

Thompson is an African-American man who was born on August 29, 1942. In June 1966, Thompson received a bachelor's degree in mathematics from Indiana Institute of Technology. In 1968, he received a master's degree in education, majoring in mathematics, from

4

St. Francis College. In 1992, Thompson started substitute teaching in School District 87 in Glen Ellyn, Illinois. At that same time, he enrolled at Illinois Benedictine College to obtain a State of Illinois teacher's certificate. While there, Thompson made the Dean's List. He also received "outstanding ratings" for his student-teacher abilities and was told that "he will be a credit to the teaching profession[.]" (Pl. L.R. 56.1 ¶ 10.)

On January 19, 1996, Thompson received a State of Illinois teacher's certificate known as "Type 09 with a math endorsement," meaning that he could teach high school mathematics. (Id. ¶ 11.) On September 17, 1996, Thompson received his first full-time teaching position at Glenbard South High School ("Glenbard South"). At the end of the school year, Glenbard South decided not to renew Thompson's contract. Glenbard South cited poor performance as the reason for Thompson's dismissal. In October 1997, Thompson filed a charge of race discrimination against Glenbard South. Subsequently, Thompson applied for full-time teaching positions in several school districts.

## C. Thompson's application experience with the School District

In July 1998, Thompson, who was almost 56 years of age, applied for a full-time math teaching position with the School District. On or about July 29, 1998, Thompson interviewed for this position with Gerald Wojtko ("Wojtko"), the chairperson of the mathematics department ("the Department") at Proviso East. Wojtko is white and was 47 years old at the time. Wojtko believed that being a minority candidate was a "plus" for employment because the school served many minority students. Nevertheless, Wojtko testified that he was not impressed with Thompson during the interview. According to Wojtko, Thompson did not seem interested in adopting the Department's education plan. Thompson also expressed opinions that seemed "at

5

odds" with the Department's direction. For example, Wojtko testified that Thompson expressed an unwillingness to adopt the School District's technology plan. The Department wanted to place more technology (such as calculators) in the students' hands, but Thompson expressed his belief that students should learn mathematics without calculators. Thompson, however, attested that Wojtko never discussed the technology plan with him and recalled that he did not ask him questions. (Pl. Resp. to Def. L.R. 56.1 ¶ 28; Thompson Dep. at 28.)

Wojtko became aware that Thompson had filed a lawsuit against the Glenbard South school district. Wojtko knew this because he was acquainted with the mathematics department chairperson at Glenbard South. Wojtko testified, however, that he cannot remember when he learned about the lawsuit and that he did not know of its nature. Moreover, Wojtko testified that his opinion of Thompson was not influenced by this knowledge.

Despite Wojtko's failure to be impressed with Thompson, Wojtko cannot recall whether Thompson met with the principal at Proviso East, Dr. Diane Dyer-Dawson. Thompson, however, testified that, after his interview with Wojtko, he immediately interviewed with Dyer-Dawson. Dyer-Dawson did not recall their interview. Dyer-Dawson is black and was 57 years old at the time. Thompson claims that he told Dyer-Dawson about his discrimination charge against Glenbard South during the interview but that she did not appear "bothered" by it. (Def. L.R. 56.1 ¶ 32.) After the interviews, the School District decided not to extend an offer of employment to Thompson. According to Thompson, this decision may be attributed to Wojtko and Dyer-Dawson because the Board of Education had yet to reject any candidate that they recommended for employment.

6

Despite this rejection, Thompson reapplied for employment with the School District on July 8, 1999 by faxing a cover sheet and updated resumé to the human resources office. At that time, the School District had four to six open math teaching positions. In response, the School District sent Thompson a letter requesting that he complete and return an enclosed application. Thompson sent the School District a completed application on or about July 16, 1999, but thereafter did not receive an interview and thus was not hired by the School District. Specifically, with respect to Proviso East, Wojtko testified that he generally did not re-interview former candidates whom he previously had declined to recommend for employment. Indeed, through discovery in the instant lawsuit, Thompson obtained a copy of his application file. On his resumé, a hand-written comment states, "No[,] previously interviewed" from which the court infers that Wojtko would not re-interview Thompson.[2] Missing from Thompson's file, however, is Wojtko's evaluation of him. According to the School District, the reason that the evaluation form may be missing is that some evaluation forms simply do not get returned to the file. (Def. Resp. to Pl. L.R. 56.1 ¶ 27.)

On July 31, 2000 and September 27, 2000, Thompson reapplied for employment with the School District. With one exception, all other candidates hired for employment filed their applications prior to July 31. Around that time, however, the School District had approximately five openings because it did not hire candidates for those positions until August 21, 2000. (Pl. L.R. 56.1 ¶ 44.)

---

[2]Thompson asserts that his application was the only one with this notation. The School District submits additional applications with the handwritten notation, "No," and an individual's first name or initials next to that notation. (Def. Ex. 21.) The School District represents that these candidates were not recommended for employment.

7

**D.    Description of the candidates that the School District hired for the 1999-2000 and 2000-01 school years[3]**

At or about the time Thompson applied in July 1999, the School District proffers evidence that it hired six mathematics teachers: Jennifer Cummings, (age) 23, white; Paul Labbato, 27, white; Michael Morris, 32, white; Matthew Peccia, 29, white; Grant Reed, 29, white; and Edna Richardson-Rogers, 48, black. All but Richardson-Rogers had the Type 09 certificate with math endorsement. The School District, however, points out that, prior to 1986, teachers did not receive certifications with a subject endorsement. (Def. Ex. 20, Murphy Aff. ¶ 3). Richardson-Rogers had 21 years teaching experience and a needed special skill in English as a second language. Peccia and Reed had four and three and one-half years, respectively, of permanent (non-substitute) teaching experience. In addition, Labbato and Peccia had teaching experience in a multi-cultural environment or with high-risk or low-ability students, and Reed was selected because of his interest and background in technology, which was a growing area of importance to the Department. Defendant, however, cites no particular reason to distinguish Cummings and Morris from Thompson.

The School District hired two teachers in January 2000: Robert Libka, 48, white; and Allison Stephenson, 22, white. The School District cites no particular reason why Libka and Stephenson were preferred over Thompson (and whether their applications were also in the back room along with Thompson's is not of record). As for Libka, the School District proffers that every math teacher hired was certified to teach their assigned classes and that one type of

---

[3]Thompson first applied in July 1998 for the 1998-99 school year. On February 4, 2002, the court determined that Thompson failed to file a timely discrimination claim for that school year. Thus, neither party provides (nor does the court consider) evidence concerning whom the School District hired for that year.

8

certificate was not better than another type, provided the State allowed that teacher to teach the assigned class. (Def. L.R. 56.1 ¶ 49.) Thompson, however, points out that Wojtko stated to him that he wanted teachers with a Type 09 certificate with a math endorsement but the School District hired Libka without the endorsement. (Pl. Resp. to Def. L.R. 56.1 ¶¶ 48-49, citing Pl. Ex. 6.) Libka had 10 ½ years of teaching experience. The interview notes indicate that Libka was certified to teach only through grade 9 and that he was being considered for a one-semester position. (*Id.*, D 00898, 00900.) Further, the interview notes state that Libka "has a math background but hasn't taught math before." (*Id.*, D 00897.)

From August 21, 2000 through the end of 2000, the School District hired 16 additional full-time math teachers. (Def. L.R. 56.1 ¶ 48.) Of these, Venida Duncan, 36, was black; all the others were white and all were under 40, save Jean Carlson, 55 and Frederick Snyder, 40.

The School District asserts that it hired candidates it believed were the most qualified for the math teacher positions. Many of the individuals hired had more than one year of permanent (non-substitute) teaching experience. Carlson had 14 years, Duncan had six years, Angela Hyink had one and one-half years, and Patrick McCluskey had three years. Other individuals also had teaching experience in a multi-cultural environment or with high-risk or low-ability students, such as Barrier, Duncan, Hyink, and Michael Sanders. Moreover, some individuals such as Michelle Tasch, Carisa Weith and Andre Zabrodsky were selected because of their interest and background in technology, which was a growing area of importance to the Department. The School District gives no explanation for why it preferred the other teachers, Thomas Bolan, 23; Kelly Weber, 25; and Brian Wickey, 21. They, like Thompson, were new teachers, thus had a

short track record, albeit positive in each instance. (Def. Ex. 17, D 00875-00878; D 00885-00888; D 00853-00856.)

## DISCUSSION

### A. Race and Age Discrimination under Counts I, II and V

A plaintiff may establish race discrimination under Title VII and 42 U.S.C. § 1981 and age discrimination under the ADEA through direct or indirect proof. *Bennett* v. *Roberts*, 295 F.3d 687, 694-95, 697-98 (7th Cir. 2002) (race discrimination claim under Title VII and 42 U.S.C. § 1981); *Huff* v. *UARCO, Inc.*, 122 F.3d 374, 379 (7th Cir. 1997) (age discrimination claim). For the indirect method of proof, the plaintiff must show that (1) he is a member of a protected class; (2) he applied for, and was qualified for, a vacant position; (3) the employer rejected him for the position; and (4) the employer filled the position with an individual outside of the plaintiff's protected class, or the position remained available. *Bennett*, 295 F.3d at 694. Once the plaintiff makes a *prima facie* showing, an inference of discrimination exists. *Millbrook* v. *IBP, Inc.*, 280 F.3d 1169, 1174 (7th Cir. 2002) (race discrimination claim). The alternative direct method of proof is likely to be used where an element of *prima facie* proof may be missing but there is "direct" evidence of discrimination. *See, e.g., Trans World Airlines, Inc.* v. *Thurston*, 469 U.S. 111, 121-22 (1985) (where the airline's method of transfer available to a disqualified flight engineers depended on age (direct evidence), the plaintiff did not have to demonstrate that there were open positions under the indirect method of proof).

Thompson does not distinguish his claims or separate his analysis under the direct and indirect methods of proof. Plainly, however, his best shot is via the indirect method.

10

*1.    Prima facie case*

Under the indirect method, Thompson readily establishes a *prima facie* case in that he is a member of a racial minority; he applied for, and was qualified for, vacant positions within the School District for the 1999-2000 and 2000-01 school years and that the School District rejected him for any position and filled some of the positions with individuals outside the protected class for those school years.

Defendant argues, to the contrary, that plaintiff cannot make a *prima facie* showing because plaintiff's applications were untimely (thus he did not apply for an available position) given that he applied in July 1998 for the coming academic year when the school began hiring the preceding February. Thompson responds that no one ever told him he should apply at another time of year and he kept his application active by reapplying annually in July. (*But see* Thompson Dep. at 28, Aug. 5, 2002, "Q: Is it your understanding that most of the teaching positions are filled prior to July? A: Yes.") Under the procedures, Thompson's 1998 application was active and in the front room until November or December of 1998, after which it was unlikely he would be considered without reactivation. Thompson did reactivate in July 1999 and July 2000. At the very least, there is evidence that in 1999 and 2000, at a time when Thompson's application was active, defendant was hiring. Thus, the untimeliness of his application goes only to issues such as to whom he may compare himself (*e.g.*, for 1999, the eight teachers hired on or after August 23, 1999 through the end of the academic year) but does not defeat his claim altogether. (Def. Resp. to Pl. L.R. 56.1 ¶ 31: Admits "Thompson's application was 'active' for the 1999-2000 school year.")

11

Defendant next argues that because some of the positions were filled by applicants who are African-Americans and persons over age 40, Thompson cannot make out the last element of his *prima facie* case. It relies on *Tunnel* v. *Powell*, 219 F. Supp. 2d 230, 236 (N.D. Cal. 2002), in which a white woman claimed discrimination based on her race alone and her sex alone, and the court ruled that where women and whites were among those selected for four open positions, the plaintiff could not make out a *prima facie* case. The court cited no authority for the proposition on which it relied. Although this court agrees that such facts tend to make a plaintiff's claim less plausible, *Tunnel*, a fact-specific district court decision from another circuit, is scant authority to undermine the proposition that each individual is entitled to the protection of the law; in other words, that another person of Thompson's race or age was not discriminated against does not preclude Thompson from proving that he was.

2.  *School District's reasons for not selecting Thompson*

Once the plaintiff has made his *prima facie* showing, "[t]he burden of production then shifts to the defendant-employer to produce evidence of a legitimate, nondiscriminatory reason for its employment decision." *Millbrook*, 280 F.3d at 1174.

Defendant simply avers that it did not hire plaintiff because he was not, in the School District's judgment, as well qualified as the hired candidates. Wojtko explained that Thompson seemed unwilling to adopt the Department's education and technology plans and move them forward, and his opinions seemed at odds with the direction of the Department. Thompson disputes that Wojtko discussed the Department's plans with him and points out that Dyer-Dawson would not have interviewed him had Wojtko recommended him. Defendant, however, as set out in the facts, explains another reason why it believed many of the teachers were

12

preferred over Thompson. Insofar as this evidence goes, it satisfies defendant's burden of production.

On the other hand, defendant has not explained why it preferred some of the candidates. Specifically, it has not articulated a reason why it hired white teachers, 48-year-old, not-Type 09-certified-math-endorsed Libka, or Bolan, Cummings, Morris, Stephenson, Weber, and Wickey, all new teachers similarly situated to Thompson, the eldest of whom was 32. Notably, defendant does not rely on an obvious distinguishing characteristic, a negative reference from Glenbard South.

For purposes of summary judgment, then, the court must find that an inference of discrimination exists with respect to these similarly situated candidates. Defendant's failure to introduce evidence of a nondiscriminatory reason "will cause judgment to go against it *unless* the plaintiff's *prima facie* case is held to be inadequate in law or fails to convince the fact finder." *St. Mary's Honor Center* v. *Hicks*, 509 U.S. 502, 510 (1993).[4]

3.      *Pretext*

With respect to the hired teachers as to whom the School District has articulated reasons for preferring them over Thompson, plaintiff must demonstrate that his evidence permits an inference that these reasons are pretextual. In order to show pretext, [the plaintiff] must demonstrate that [the defendant's] proffered reason is a lie or completely lacks factual basis."

---

[4]It is still plaintiff's burden to "demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought. Elimination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one." *Int'l Bhd. of Teamsters* v. *United States*, 431 U.S. 324, 358 (1977). Whether this is part of the *prima facie* showing or a rebuttal to defendant's proffer of a non-discriminatory reason, where there are disputes of fact, summary judgment cannot be granted.

*Jordan* v. *Summers*, 205 F.3d 337, 343 (7th Cir. 2000). "[His] proof would at that point be sufficient to support an inference that the [employer's] real reason was discriminatory." *Hoffman* v. *MCA, Inc.*, 144 F.3d 1117, 1123 (7th Cir. 1998) (internal quotations omitted); *see also Reeves* v. *Sanderson Plumbing Prod.*, 530 U.S. 133 (2000) ("the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual,'" *quoting Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 255 (1981). If the plaintiff raises an inference of discrimination he has not won his case. He has merely produced enough evidence to defeat summary judgment and proceed to trial. *Hoffman*, 144 F.3d at 1123, citing *St. Mary's Honor Ctr.*, 509 U.S. at 519.

In addition to the evidence supporting his *prima facie* showing, Thompson relies on circumstantial evidence such as that set out in *Troupe* v. *May Dep't Stores*, 20 F.3d 734, 736 (7th Cir. 1994): (1) suspicious timing, ambiguous statements, etc., and (2) evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic on which an employer is forbidden to base a difference in treatment (here race and age) received systematically better treatment.

With respect to Thompson's allegations of race discrimination, the court concludes that he has no evidence that points to an inference of pretext. Thompson does not even articulate a viable theory based on his "suspicious circumstances" evidence.[5] And his "statistical" evidence

---

[5]The first type of circumstantial evidence is evidence of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. *Troupe*, 20 F.3d at 736 (" the most common type of evidence in an intentional discrimination case."). This category would comprehend Thompson's evidence that his interviewer evaluation form was missing from his application file and that his file was the only one marked "no[,] previously interviewed[,]" which notation prevented him from being interviewed in subsequent years even though his

14

is meaningless because it lacks context. He asserts that there were 37 math teachers hired in 1999 and 2000, of whom only four were African-American, but the number of qualified African-Americans who applied for the math teacher positions (or any teaching position) is not of record.[6] Further, he concedes that the School District considered being African-American a hiring "plus." Finally, plaintiff's subjective belief that he was better qualified than the selected white applicants does not permit a reasonable jury to conclude that the School District's articulated reasons are unworthy of belief. *See Wade* v. *Lerner New York, Inc.*, 243 F.3d 319, 324-25 (7th Cir. 2001); *Ritter* v. *Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000) (The relative merits of each candidate and the subjective impressions they conveyed to the decision maker are the kind of facially legitimate employment decisions that federal courts will not reexamine). Because Thompson has no evidence other than his own opinion that would rebut defendant's articulated reasons set out in contemporaneous notes, there is little room to challenge the judgment of those who made these decisions. Therefore, any inference of race discrimination would be based on speculation. For these reasons, the court concludes the evidence is insufficient to go to the jury.

With respect to the age claim, the court concludes to the contrary. The evidence demonstrates that Thompson was a 57-year old inexperienced teacher. Most other applicants of his level of experience who were hired were well under the age of 40. Although Snyder was 40,

---

file was technically active. Thompson also mentions, without suggesting what it might mean, that the black Director of Human Resources who initially sent him to interview with Wojtko left the School District shortly after he applied.

[6]Thompson also argues that the School District continuously failed to hire him up to the present time period and that the School District has not hired any "black males." As the School District correctly points out, Thompson fails to allege failure to hire claims for the 2001-02 school year as well as fails to allege a sex discrimination claim. Thus, he fails to give notice of such claims. *Accord, Gorence*, 242 F.3d at 763 ("a federal court complaint needs to give notice of what the claims are.").

15

he, too, was substantially younger than Thompson. *See Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000) (fourth element of *prima facie* showing is that the defendant hired someone else who was *substantially younger* or other such evidence that indicates that it is more likely than not that his age or disability was the reason for the discharge). At the same time, the teachers in Thompson's age range who were hired (Libka, Richardson-Rogers) had more than ten years of experience. On this basis, a reasonable jury could infer that had Thompson been a young African-American teacher with the qualifications he presented, he would have been hired or, at least, his age was a motivating factor behind the School District's rejection of his application. *See Desert Palace, Inc. v. Costa*, ___ U.S. ___, 123 S. Ct. 2148 (June 9, 2003) (where both legitimate and illegitimate considerations motivated the employer's decision, an inference of discrimination may arise from circumstantial evidence). The age claim, then, will be allowed to go to trial.

In summary, plaintiff's motion for summary judgment on the Title VII and ADEA claims will be denied. The issues are narrowed, however, in that plaintiff's age and race claims are limited to the 1999-2000 and 2000-01 school years, and plaintiff may only offer evidence that the failure to hire him instead of Bolan, Cummings, Libka, Morris, Stephenson, Weber, and Wickey was discriminatory.

**B.  Race discrimination under Count III**

Thompson also claims race discrimination under the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. To state such a claim, Thompson must show that the School District (1) violated his constitutionally protected rights (2) according to a municipal policy or custom, or an action taken by a final policymaker. *Bennett*, 295 F.3d at 699.

16

Here, the parties dispute whether Thompson meets the second requirement, to proffer evidence that a final policymaker was involved in the decision not to hire him. According to Thompson, Wojtko and Dyer-Dawson are the final policymakers because the Board of Education has yet to reject a candidate recommended by them. Moreover, Thompson asserts that Wojtko is the true final policymaker given that Dyer-Dawson admitted she rarely rejected any candidate that Wojtko recommended to her.

Thompson's argument is unavailing. Under Illinois law, it is well-established that the Board of Education is the final policymaker under § 1983. *E.g., Duda* v. *Bd. of Educ. of Franklin Park Sch. Dist.*, 133 F.3d 1054, 1061 (7th Cir. 1998) (affirming dismissal of a complaint against a school district on the grounds that a school superintendent, principal, business manager, and director of buildings and grounds were not final policymakers with respect to personnel decisions). Thus, the court will grant summary judgment in favor of the School District on Count III.

C. **Retaliation under Count IV**

A plaintiff may show that he has a claim for retaliation under the direct or indirect method of proof. *Stone* v. *City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Here, defendant argues that Thompson has not demonstrated his *prima facie* case under the indirect method because he can show no "causal link" between his discrimination charge filed against Glenbard South and the School District's decision not to hire him. In *Stone*, 281 F.3d at 643-44, however, the Seventh Circuit determined that evidence of a casual link was no longer part of the plaintiff's *prima facie* case in a retaliation claim. Moreover, the parties' dispute centers on the credibility of Wojtko's testimony, which clearly is at issue. Primarily,

17

there are material facts in dispute concerning whether Wojtko recommended Thompson for employment. A reasonable trier of fact may infer that Wojtko would not have had a candidate interview with Dyer-Dawson unless he recommended that candidate for employment. Further, despite Wojtko's belief that he did not recommend Thompson for employment, Thompson testifies that, after he interviewed with Wojtko, he interviewed with Dyer-Dawson, suggesting that Wojtko may have, in fact, recommended him at that time.

Most importantly, Wojtko's testimony concerning how he learned about Thompson's discrimination charge against Glenbard South should be subject to cross-examination where the trier of fact may observe his demeanor. *See Krchnavy* v. *Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002) ("We apply the summary judgment standard with special scrutiny to employment discrimination cases, which often turn on issues of intent and credibility."). Wojtko testified that he spoke with Glenbard South and learned that Thompson filed a "lawsuit" against it although he cannot recall when he spoke with Glenbard South and stated that he did not know the nature of the charge. Nevertheless, if a trier of fact disbelieves Wojtko, then a trier of fact reasonably may infer that Wojtko recommended Thompson and learned about the discrimination charge when he performed reference checks. It, therefore, would follow that Wojtko and/or Dyer-Dawson decided not to recommend Thompson for employment based on his discrimination charge against Glenbard South. For these reasons, it is for the trier of fact, and not this court, to resolve the credibility issues on these material facts and to weigh the evidence. Thus, the court will deny summary judgment in favor of the School District on Count IV.

## ORDER

Wherefore, for the reasons stated above, the School District's motion for summary judgment is granted on Count III and denied on Counts I, II, IV and V. Trial is set for Monday, October 6, 2003. Final pretrial materials shall be submitted to chambers not later than Friday, September 5, 2003. In the meantime, the parties will be referred to the designated magistrate judge for a settlement conference. A final pretrial hearing is set for September 18, 2003 at 4:00 p.m.

Enter: _[signature]_
JOAN HUMPHREY LEFKOW
United States District Judge

Date: July 10, 2003